IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHANIKA SMITH, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | No. 20-00900 |
| v. | : | |
| | : | |
| RB DISTRIBUTION, INC. ET AL | : | |
| | : | |
| Defendants. | : | |

**McHUGH, J.**                                                                                                       **January 25, 2021**

**MEMORANDUM**

    This matter highlights a conceptual challenge inherent in claims asserting intentional infliction of emotional distress ("IIED"), particularly where the claimant depends upon a series of encounters over a period of time. This "highly circumscribed" tort requires conduct to pass the boundary of civilized behavior into the "extreme and outrageous" before it can be actionable.[1] Many decisions have discussed IIED, but courts rarely find that the facts alleged meet this rigorous standard.[2] This dynamic places plaintiffs—and courts alike—in a dilemma. If a plaintiff files an IIED claim too early, her factual allegations might not suffice to state a claim under this demanding measure. But a plaintiff who waits until all relevant conduct has occurred runs the risk of being barred by the statute of limitations.

    This is one such case. Shanika Smith ("Plaintiff") has alleged that her co-worker, Jose Rosario ("Defendant"), sexually harassed her from the spring of 2017 until his termination from the company in June 2018. Mr. Rosario made graphic, sexualized statements to Ms. Smith and

---

[1] *Kazatsky v. King David Memorial Park, Inc.*, 515 Pa. 183, 190 (1987).

[2] *See Kelly v. Jones*, 148 F. Supp.3d 395, 405 n.2 (E.D. Pa. 2015) (describing intentional infliction as a "hypothetical tort" in light of the Pennsylvania Supreme Court's continued failure to recognize facts sufficient to state a claim).

1

attempted to grope her vagina on one occasion. After Ms. Smith filed a complaint against Defendant, she contends that he persisted in his harassment, offering Ms. Smith money to perform sexual favors. And in retaliation for her complaint, Mr. Rosario purportedly enlisted another co-worker to help him sabotage Ms. Smith's work performance. Taken together, such conduct could be viewed as extreme and outrageous by an average person, and I ultimately conclude that Ms. Smith has stated a claim for intentional infliction of emotional distress. Admittedly, some of the events giving rise to the claim occurred more than two years before Plaintiff filed suit. Nonetheless, for the reasons that follow, I further conclude that Ms. Smith's claim is timely, as she filed within two years of the point at which Mr. Rosario's harassment ended.

## I.   Facts and Procedural Posture

The facts alleged in this case are set out at length in an earlier memorandum opinion, *see* Mem. Op., ECF No. 23, and I do not repeat them in full here. When the pleadings are viewed in the light most favorable to Ms. Smith, she has alleged that Mr. Rosario harassed her continuously from the spring of 2017, when they were both converted to permanent "return processor" positions at the company, up until his termination in June 2018. *See* First Am. Compl. ¶¶ 36, 82, ECF No. 11. Plaintiff describes a number of explicit, unwelcome, and sexualized comments, which include Rosario telling her that he was aroused by the "vagina print from [her jeans];" that she "[had] a really fat ass;" that he would treat her like a queen if she were his; that she was making him hard; as well as fantasizing about the things he would do to her if she gave him a "chance." *Id.* ¶¶ 39, 40, 46, 47, 67. She also claims that, in the fall of 2018, Defendant placed his hand on Smith's thigh and attempted to grope her vagina, saying "[f]uck, that pussy looks fat, Mommy." *Id.* ¶ 49.

Ms. Smith has further alleged that, after she reported Mr. Rosario to human resources in December 2017, Mr. Rosario and his friend Sophia, a male co-worker at the company, attempted

to sabotage her performance metrics by providing her with oversized car parts, which Ms. Smith was then charged with inspecting. *Id.* ¶¶ 70, 71. Ms. Smith repeatedly rejected Mr. Rosario's advances and ultimately filed three complaints against him. *Id.* ¶¶ 52, 74, 81. Finally, in June 2018, their employer terminated Mr. Rosario, presumably due to his harassment of Ms. Smith. *Id.* ¶ 82.

Ms. Smith filed her complaint in federal district court on February 18, 2020. *See* Compl., ECF No. 1. Her claims against Defendant include discrimination under the Pennsylvania Human Relations Act ("PHRA"), retaliation under the PHRA, aiding and abetting under the PHRA, discrimination under the Philadelphia Fair Practices Ordinance ("PFPO"), retaliation under the PFPO, aiding and abetting under the PFPO, intentional infliction of emotional distress, and assault and battery. *See* First Am. Compl. ¶¶ 160, 164, 167, 170, 174, 178, 182, 199. This Court entered a default against Mr. Rosario on May 23, 2020. *See* ECF No. 8. Mr. Rosario subsequently retained counsel, and I granted his motion to set aside the default. *See* ECF No. 22. Plaintiff has consented to the dismissal of all of the counts against Defendant, save her claims for IIED and declaratory relief. *See* Pl.'s Resp. Opp. 1–2, ECF No. 31.

**II.    Standard of Review**

Within the Third Circuit, motions to dismiss under Fed. R. Civ. P. 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

**III.   Discussion**

A. Intentional Infliction of Emotional Distress

To trigger liability for intentional infliction of emotional distress, "(1) the conduct [of the defendant] must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause

emotional distress; [and] (4) the distress must be severe." *Hoy v. Angelone*, 691 A.2d 476, 482 (Pa. Super. Ct. 1997), *aff'd* 554 Pa. 134 (1998). Extreme and outrageous conduct constitutes behavior "beyond all possible bounds of decency," "atrocious," and "utterly intolerable in a civilized community. *Id.* at 151 (citing Restatement (Second) of Torts § 46, cmt. d (1965)).[3]

1. *Statute of Limitations*

Defendant first argues that Plaintiff "has alleged insufficient timely allegations to support the intentional infliction of distress claims against Mr. Rosario." Def.'s Mem. Supp. Mot. Dismiss 4, ECF No. 25-2 ("Def.'s Mem"). As a general matter, a court may grant a Fed. R. Civ. P. 12(b)(6) motion to dismiss on statute of limitations grounds where the complaint is facially noncompliant with the limitations period and the defendant affirmatively raises the defense. *See Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1385 n.1 (3d Cir. 1994). The statute of limitations for tort claims in Pennsylvania is two years. 42 Pa. Cons. Stat. Ann. § 5524(7) (Purdon Supp. 1997). The Supreme Court of Pennsylvania has held that the limitations period begins to run when a cause of action accrues, which does not occur until "the plaintiff could have first maintained the action to a successful conclusion." *Fine v. Checcio*, 582 Pa. 253, 266 (2005). This standard for accrual comports with federal practice generally. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007) (observing "the standard rule that accrual occurs when the plaintiff has a complete and present cause of action") (internal punctuation omitted).

---

[3] In *Kazatsky v. King David Memorial Park, Inc.*, the Pennsylvania Supreme Court discussed section 46 of the Restatement (Second) but found the facts insufficient to state a claim. 515 Pa. at 191. In subsequent opinions, Pennsylvania appellate courts have also cited section 46. *See, e.g.*, *Reardon v. Allegheny College*, 926 A.2d 477, 487, 488 (Pa. Super. Ct. 2007) (noting that the Pennsylvania Supreme Court had not formally adopted Restatement Second of Torts § 46 but applying § 46(1) as the appropriate legal standard to be applied in reviewing a claim for intentional infliction of emotional distress). The Third Circuit has predicted that Pennsylvania will recognize such a tort. *See Pavlik v. Lane Ltd/ Tobacco Exporters Int'l*, 135 F.3d 876, 890 (3d Cir. 1998). As reflected by the discussion below, the Pennsylvania Supreme Court seems to have tacitly recognized the existence of the tort in *Hoy*, 554 Pa. at 151.

The parties advance divergent methods of calculating the statute of limitations, neither of which will suffice. Mr. Rosario's analysis does not explicitly indicate when Ms. Smith could have first maintained her cause of action; instead, he directs the Court to confine its review to events in the two-years preceding the filing of her complaint. *See* Def.'s Mem. 4–5. This would effectively constrain the analysis to conduct that took place after February 18, 2018.[4] Conversely, Ms. Smith claims, without citation to legal authority, that this Court must consider the entirety of the alleged harassment because she has "pled continuing violations by Defendant Rosario." Pls. Resp. Opp'n 3, ECF No. 31. The difficulty there is that Plaintiff invokes federal employment law, and it is not clear that Pennsylvania courts have formally imported the "continuing violation" doctrine in evaluating claims for emotional distress. *See Shank v. Se. Sch. Dist.*, No. 14-1811, 2015 WL 13861964, at *9–10 (M.D. Pa. Sept. 22, 2015) (expressing doubt that the continuing violation exception applies to Pennsylvania IIED claims).

Rather, under Pennsylvania law, I must identify the point at which Plaintiff's factual allegations sufficed to state a claim for IIED such that she could have "maintained the action to a successful conclusion." *Fine,* 582 Pa. at 266. Federal courts have employed differing approaches. One district court concluded that "the statute of limitations for intentional infliction of emotional distress in Pennsylvania is two years from the date of the *last conduct*." *Robinson v. Consol. Corp.*, 668 F. Supp. 2d 678, 691 (M.D. Pa. 2009) (emphasis added). More commonly, however, courts have compared the elements of the claim with the allegations to determine at what point the elements were met. *See, e.g.*, *Sanders v. Pennsylvania's State Sys. of Higher Educ.*, No. 18–1423, 2019 WL 3824230, at *3 (M.D. Pa. Aug. 14, 2019) (setting accrual at the point of plaintiff's termination of employment); *Glickstein v. Neshaminy Sch. Dist.*, No. 96–6236, 1997 WL 660636,

---

[4] Plaintiff filed her complaint on February 18, 2020.

5

at *14 (E.D. Pa. Oct. 22, 1997) (stating that the limitations "period must be measured from the date of the last discrete incident of harassment accompanied by retaliation").

Applying the elements of a claim approach, an IIED claim that is founded upon sexual harassment will accrue when the defendant's intentional or reckless conduct rises to the level of "extreme and outrageous" behavior and causes severe emotional distress.  The burden of demonstrating "outrageous" conduct is substantial.  Harassment may only suffice when it is viewed cumulatively, and some courts have therefore included harassing conduct that precedes the two-year limitations period in their analysis.

One such example is *Shaffer v. National Can Corp.*, where the plaintiff alleged that she had been harassed from 1977 to 1981.  565 F. Supp. 909, 909 (E.D. Pa. 1983).  The complaint was filed on November 23, 1982.  *Id.*  Rather than limiting its examination to conduct that occurred after November 23, 1980, the court held that, based on the totality of the harasser's conduct, which included largely consisted of using "his authority to gain Shaffer's sexual favors and employ[ment of] subtle threats," Ms. Shaffer had stated a claim for IIED.  *Id.* at 916.  The court in *Bowersox v. P.H. Glatfelter Co*, followed a similar approach.[5]  677 F. Supp. 307 (M.D. Pa. 1988).  Observing that a co-worker "subjected Joanne Bowersox to sexual harassment for several years while they worked together," the court treated the alleged harassment as cumulative and determined that it collectively sufficed to support an IIED action.  *Id.* at 308.  The opinions in *Shaffer* and *Bowersox* are not explicit in identifying a precise point at which the statute of limitations began to run, but based on each court's discussion of the record, it becomes apparent that the limitations period began after the harassment ended.

---

[5] The court's decision in *Bowersox* served as one of the bases for the Pennsylvania Supreme Court's decision in *Hoy.*  554 Pa. at 152.

The high bar presented by the "extreme and outrageous" standard necessitates such an approach. This is illustrated by the Pennsylvania Supreme Court's analysis of intentional infliction based upon workplace sexual harassment. *See Hoy*, 554 Pa. at 152. The *Hoy* Court concluded that even repeated sexual harassment over a period of years would not necessarily qualify as extreme and outrageous. *Id.* at 153 (dismissing allegations of "sexual propositions, physical contact with the back of [plaintiff's knee, the telling of off-color jokes and the use of profanity on a regular basis, as well as the posting of a sexually suggestive picture"). Given Pennsylvania case law, except in extraordinary circumstances, a single incident of sexual harassment is highly unlikely to satisfy the elements of an IIED claim. *But see Doe v. Neshannock Twp. Sch. Dist.*, No. 15-1089, 2016 WL 3057666, at *2 (W.D. Pa. May 31, 2016) (determining that the sexual assault of a sleeping child by four peers could constitute outrageous conduct). A victim of harassment may ultimately need to allege "continuing malicious actions" in order to state a claim for IIED. *See John v. Philadelphia Pizza Team, Inc.*, 209 A.3d 380, 385 (Pa. Super. Ct. 2019) (observing that the duration of the conduct is a key factor in evaluating its outrageousness).

If I characterize Plaintiff's claim as encompassing all of Defendant's alleged harassment, the cause of action would begin to accrue in June 2018, once Defendant was terminated and the harassment ceased. *See* First Am. Compl. ¶ 82. The most logical alternative to this date is December 2017, when Smith first reported Rosario's harassment through corporate channels after he groped her inner thigh that fall. *Id.* ¶ 52. This period represents the first clear example of Smith's awareness that Rosario's conduct had injured her in some form. Had the harassment ceased in December 2017, Defendant would have a strong argument that Smith's claim began to accrue at that point.[6] However, it is unclear whether Mr. Rosario's behavior from spring 2017 to

---

[6] Had the harassment ceased, this case would have resembled the Third Circuit's decision in *Bougher v. University of Pittsburgh*, 882 F.2d 74 (3d Cir. 1989). There, a student had been subjected to sexual harassment by a professor

7

December 2017, which included lewd comments and one instance of sexual touching, would meet the high bar for "extreme and outrageous" conduct. *See, e.g.*, *Swanson v. Nw. Human Serv., Inc.*, No. 05-CV-3054, 2006 WL 3354145, at *5 (E.D. Pa. Nov. 2, 2006) ("alleged conduct, i.e, grabbing of Plaintiff's buttocks on one occasion and requests for dates, while unacceptable, does not rise to the level of outrageousness for an IIED claim").

The authority that most strongly supports Defendant is *Brillhart v. Sharp*, No. 07-1121, 2008 WL 2857713 (M.D. Pa. July 21, 2008). There, the plaintiff was subjected to a sexual battery (groping her breasts and unwanted kissing), after which the defendant continued to stare at the plaintiff, wink at her, and stick his tongue out. *Id.* at *3. The court concluded that the statute of limitations for the plaintiff's emotional distress claim began to run at the time of the battery. *Id.* at *5. But *Brillhart* cannot easily be reconciled with the Pennsylvania Supreme Court's holding in *Fine* that "a cause of action accrues when the plaintiff could have first maintained the action to a successful conclusion."[7] 582 Pa. at 266. And if the logic in *Brillhart* were adopted broadly,

---

for several years but relationship between the two ended in January 1983. *Id.* at 76. The student filed a complaint in May 1986. *Id.* The student had not had contact with her alleged harasser in the two years preceding the complaint, except for one minor interaction in a public restaurant that took place in 1986. *Id.* at 78. In its brief discussion, the Third Circuit observed that the actions during the limitations period "were not so outrageous as to constitute intentional infliction of emotional distress." *Id.* at 80. The court's refusal to consider the earlier sexual harassment evidence could be justified on the theory that plaintiff's IIED claim based on the harassment began to accrue once the harassment ceased in 1983 (and was barred, as a result, in 1986).

[7] The court in *Brillhart* considered a continuing violation theory but determined that the doctrine did not apply because the leering after the assault was not sufficiently extreme or outrageous. 2008 WL 2857713, at *6. Pennsylvania courts have not addressed the applicability of continuing violation theories to IIED claims. It is worth noting, however, that in jurisdictions that have adopted this rule, courts have not required plaintiffs to demonstrate that the conduct occurring within the limitations period was outrageous. Instead, judges have examined whether the conduct was part of continuous pattern of wrongful behavior that could support a claim for IIED if viewed collectively. *See, e.g.*, *Manliguez v. Joseph*, 226 F.Supp.2d 377, 386–387 (E.D.N.Y. 2002) (finding that "Plaintiff has demonstrated an issue of material fact as to whether Defendants continued to threaten Plaintiff well into the one-year limitations period and whether the threats were part of a continuous pattern of harassment and intimidation"). *See also Limestone Dev. Corp. v. Vill. of Lemont Ill.*, 520 F.3d 797, 800 (7th Cir. 2008) (explaining that the continuing violation doctrine "allow[s] suit[s] to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought").

plaintiffs would be required to assume that the statute begins to run when the first unwelcome conduct occurs. A multiplicity of filings would result.

In that regard, in the context of asbestos claims, the Pennsylvania Superior Court has recognized that defining accrual too broadly works against the goal of judicial economy. Specifically, in *Cathcart v. Keene Indus. Insulation*, 471 A.2d 493, 500 (Pa. Super. Ct. 1984), *abrogated on other grounds by Daley v. A.W. Chesterton, Inc.*, 614 Pa. 335 (2012), the court observed the need for balance in determining when the statute of limitations begins to run:

> A narrow definition will greatly enlarge the right of plaintiffs, as the statute of limitations will begin to run at a later time. Adoption of a loose definition of "injury" will mean that the statute of limitations could begin running with the discovery of a trivial harm, with the likely consequence that inconsequential lawsuits will be filed in order to avoid statute of limitations problems.

*Id.* at 500 n.10.

I share this concern. As I observed at the outset, plaintiffs with claims that are predicated upon a continuous course of sexual harassment are caught in a dilemma. If plaintiffs are deemed to have multiple IIED claims, with some time-barred, these individuals will be incentivized to file suit after single incidents to preserve their claims. These piecemeal allegations may not rise to the level of "extreme and outrageous" conduct when abstracted from the broader harassment campaign. But at the same time, a plaintiff that waits until all possible incidents have transpired runs the risk of forfeiting her cause of action.

On the record here, I conclude that Plaintiff's cause of action accrued following Mr. Rosario's termination in June 2018. Pennsylvania courts have stressed that "continuing malicious actions" are more likely to be deemed "extreme and outrageous." *Philadelphia Pizza Team, Inc.*, 209 A.3d at 385. It is also relevant that Plaintiff's emotional distress is linked to the long duration and persistency of Rosario's alleged misconduct, which continued without interruption from

spring 2017 until his termination in June 2018. And his acts of retaliation may be relevant under the Pennsylvania Supreme Court's analysis in *Hoy,* even though he was not technically her supervisor. [8]  *See* 554 Pa. at 152–153.

Moreover, given the high bar for IIED claims, a reasonable jury would not have sufficient evidence on which to find extreme and outrageous conduct before Mr. Rosario's harassment ended in June 2018. I am further persuaded by the fact that Ms. Smith certainly had full knowledge of her injury by the time Rosario was terminated. Accordingly, Ms. Smith's IIED claim began to accrue in June 2018 and remained timely as of her February 18, 2020 complaint. *See A McD. v. Rosen*, 621 A.2d 128, 131–132 (Pa. Super. Ct. 1993) (setting the point of accrual at plaintiff's termination of her relationship with an abusive therapist because "there no longer were any facts that could not have been discerned by the exercise of reasonable diligence").

2. *Merits of Plaintiff's IIED Claim*

The analysis above implicitly suggests that the allegations here could support a claim for intentional infliction of emotional distress. I now address the merits explicitly. To reiterate, to state a claim for IIED, "(1) the conduct [of the defendant] must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; [and] (4) the distress must be severe." *Hoy*, 691 A.2d at 482. Extreme and outrageous conduct is "beyond all possible bounds of decency," "atrocious," and "utterly intolerable in a civilized community. *Hoy*, 554 Pa. at 151 (citing Restatement (Second) of Torts § 46, cmt. d (1965)). It is the "duty of the court to determine, in the first instance, whether the defendants' conduct could reasonably be regarded as so extreme

---

[8] Defendant argues that Plaintiff admits the alleged retaliation was the same as Mr. Rosario's continued unwanted advances toward her. *See* Def.'s Reply 2–3, ECF No. 32. In Plaintiff's complaint, however, she states that "Defendant ROSARIO and Sophia (Last Name Unknown) continued to excessively monitor and unnecessarily nitpick Plaintiff's work performance as well as intentionally sabotage her performance metrics by providing her with unreasonable, oversized skids." First Am. Compl. ¶ 71. Such conduct would be separate from Mr. Rosario's ongoing advances.

10

and outrageous as to permit recovery." *Wells v. Thomas,* 569 F.Supp. 426, 433 (E.D. Pa.1983) (citing *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273–74 (3d Cir. 1979)).

With respect to the first element, the Pennsylvania Supreme Court has observed that even though "[a]s a general rule, sexual harassment alone does not rise to the level of outrageousness necessary to make out a cause of action for the intentional infliction of emotional distress," "blatantly abhorrent conduct" may be actionable. *Hoy*, 554 Pa. at 152, 153 (1998).[9] A number of courts have recognized such claims in the context of the workplace. *See Bowersox v. P.H. Glatfelter Co*, 677 F. Supp. 307, 308 (M.D. Pa. 1988); *Stolzenthaler v. Showcase Publ'n., Inc.*, No. 18-04019, 2018 WL 3849908, at *3 (D. N.J. Aug. 13, 2018) (stating that inappropriate touching, comments on social media, sexual innuendos and propositions and a failure to remediate could comprise IIED); *Skidmore v. Precision Printing and Pkg., Inc.*, 188 F.3d 606, 612 (5th Cir. 1999) (sufficient evidence to support jury verdict where Plaintiff was persistently subjected to sexually suggestive touching and graphic sexual remarks including the suggestion that she allow the defendant "to lick her from head to toe"); *Akers v. Alvey*, 338 F.3d 491, 496 (6th Cir. 2003) (conduct that included making lewd gestures, commenting daily on Plaintiff's physique, attempting to look down plaintiff's blouse, and sending explicit e-mail messages could be viewed as outrageous). An evaluation of the level of conduct required is to some degree inescapably subjective. This is particularly the case with respect to harassment because community mores have undergone significant revision in recent years. *See* Joan C. Williams et al., *What's Reasonable Now? Sexual Harassment Law after the Norm Cascade*, 2019 Mich. St. L. Rev. 139 (2019).

---

[9] *Hoy* did not explicitly adopt section 46 of the Second Restatement but appears to assume the existence of a cause of action for intentional infliction of emotion distress. 554 Pa. at 151

Rosario is alleged to have told Smith that he was aroused by the "vagina print from [her jeans];" that she "[had] a really fat ass;" that he would treat her like a queen if she were his; that she was making him hard; that her "pussy looks fat" as well as fantasizing about the things he would do to her if she gave him a "chance." First Am Compl.. ¶¶ 39, 40, 46, 47, 49, 67. Smith also has claimed that Rosario attempted to grab her vagina and offered her money in exchange for sexual favors. *Id.* ¶¶ 49, 68.

The crude and anatomically specific nature of Mr. Rosario's comments, the physical groping, the persistence of the conduct, the propositions, which included the solicitation of sex for money, along with the separate acts of work-related retaliation when his overtures were refused, could be viewed by an average person as "utterly intolerable within a civilized community," particularly given the evolution in community standards. At the very least, this is a case where "reasonable [people] may differ" and, as such, "it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." Restatement (Second) of Torts § 46 cmt. h (1965).

With respect to the second element of Plaintiff's claim, a person's conduct is intentional "where the actor desires to inflict severe emotional distress, and also where he knows that such distress is certain, or substantially certain, to result from his conduct." Restatement (Second) of Torts § 46 cmt. i (1965). Plaintiff alleges that she resisted Rosario's advances at numerous points and filed three complaints against him with management. *See* First Am. Compl. ¶¶ 52, 74, 81. Her conduct indicated that she experienced distress as a result of his behavior, and Rosario's persistence following her complaints, along with his attempts to subsequently sabotage Plaintiff's work, suggest that he knew that distress was substantially certain to result from his conduct.

Finally, Smith must show that Rosario's conduct caused severe emotional distress. In her amended complaint, Smith also maintains that the "[s]exually harassing conduct caused Plaintiff to sustain severe emotional distress resulting in physical illness and serious psychological sequelae." *Id.* ¶ 132. To prevail, medical evidence will be required. *See Kazatsky*, 515 Pa. at 197 ("existence of the alleged emotional distress must be supported by competent medical evidence"). Although this allegation is somewhat conclusory, it is sufficient at this stage of the case. *See Philadelphia Pizza Team, Inc.*, 209 A.3d at 385 (noting that allegations of "serious emotional harm, psychological distress and damage" constitute sufficient facts to state a claim).

B. <u>Availability of Declaratory Relief</u>

The Third Circuit has long held that actions for declaratory relief are governed by the limitations period that applies to the underlying legal claims. *See Algrant v. Evergreen Valley Nurseries Ltd. P'ship.*, 126 F.3d 178, 184–185 (3d Cir. 1997). Plaintiff's request for a judicial declaration appears to be predicated on Defendant's alleged assault and battery, retaliation, and discrimination. Because such claims cannot be brought against individuals under Title VII, *see Kachmar v. SunGuard Data Sys., Inc.*, 109 F.3d 173, 184 (3d Cir. 1997), presumably Plaintiff seeks a declaration that Defendant's retaliation and discrimination violated her rights under the PHRA and the PFPO.

Plaintiff's claims under the PHRA and PFPO have been dismissed as untimely filed. *See* Mem. Op. 23–24. And as Plaintiff implicitly recognized in her dismissal of her battery claim, *see* Pl.'s Resp. Opp. 1–2, her cause of action for battery is time-barred, as she filed her complaint more than two years after the fall of 2017, when the alleged batter occurred. *See E.J.M. v. Archdiocese of Philadelphia,* 622 A.2d 1388, 1393 (Pa. Super. Ct. 1993) (noting that a cause of action for battery will accrue at the time of the act as "a plaintiff will ordinarily know all he or she needs to

13

know concerning the injury and its cause at the moment the battery occurs"). Declaratory relief is therefore unavailable for these claims.

Plaintiff's claim for declaratory relief in connection with the IIED would not be time-barred, assuming that Pennsylvania recognized such recovery. Nonetheless, declaratory relief is "by definition prospective in nature" and cannot be obtained for alleged past wrongs. *CMR D.N. Corp. v. City of Philadelphia,* 703 F.3d 612, 628 (3d Cir. 2013). In her cursory request for declaratory relief, Plaintiff appears to seek declaratory relief to adjudicate past conduct. I cannot identify any concrete and ongoing controversy. *See McDonald v. Thomas*, No. 13–1471, 2015 WL 5032379, at *6 (M.D. Pa. Aug. 25, 2015). Plaintiff's prayer for such relief will be stricken.

### IV.     Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss Plaintiff's First Amended Complaint will be granted in part and denied in part. An appropriate order follows.


    /s/ Gerald Austin McHugh\_\_
United States District Judge